**GRUVER v. HELVERING, Commissioner of Internal Revenue.**

No. 6019.

Court of Appeals of the District of Columbia.

Argued Feb. 8, 1934.

Decided March 12, 1934.

Robert E. Kline, Jr., and James Craig Peacock, both of Washington, D. C., for petitioner.

E. Barrett Prettyman, Sewall Key, Louise Foster, J. D. Kiley, and S. S. Faulkner, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

The issue in this case relates to income taxes for the year 1927. The item in question is a net loss sustained by petitioner in the year 1926, claimed by petitioner to be attributable to the operation of a trade or business regularly carried on by him in the year 1926, and therefore deductible from his net income in the succeeding taxable year (1927) under section 206, Revenue Act of 1926 (44 Stat. 9, 17 [26 USCA § 937]). The controlling provisions of the act read in part as follows:

"Sec. 206. (a) As used in this section the term 'net loss' means the excess of the deductions allowed by section 214 or 234 [section 955 or 986 of this title] over the gross income, with the following exceptions and limitations:

"(1) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business; * * *

"(b) If, for any taxable year, it appears upon the production of evidence satisfactory to the commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year'). * * *" (26 USCA § 937 (a) (1), (b).

It appears that the petitioner for over twenty-four years was engaged in the real estate and building business, buying ground, building houses thereon, and financing such operations. As his business increased, he began to operate not only as an individual but in partnerships, joint ventures, and corporations.

The loss now in question arose from a transaction in Florida lands. In the year 1926, petitioner entered into a real estate transaction in Florida in association with a Mr. Thrift, who was his partner in various transactions, for the purpose of buying and developing certain lands there. A corporation was organized for this purpose under the name of the D. C. Investment Corporation. Petitioner testified: "I positively would not go into it until I had incorporated the corporation in order to protect ourselves if anything should occur, and save us financially, and it was a very good thing that we did, or I would not be here today, that is so far as income tax was concerned." He explained this statement as follows: "We had to give back an enormous trust, and that is where it being incorporated saved us." The corporation had three stockholders, but Mr. Thrift and the petitioner owned in equal shares practically all of the stock, for which each paid the sum of $5,000. The petitioner was the president of the corporation, and gave from one-fourth to one-half of his time during this period to the undertaking.

The Florida land purchased by the corporation had an estimated value of more than $600,000. The petitioner advanced to the corporation from his personal funds $93,028 in addition to the $5,000 paid by him for his shares of stock. The land was only partially paid for; a trust deed being put upon it to secure the deferred payments. These were represented by notes of the corporation; the notes were not indorsed by the petitioner.

When the land was purchased, it was with a view to subdividing it and selling it off, in lots, as had been done in prior purchases in which petitioner was interested. In 1926, however, there was a foreclosure of the trust on the land, whereby petitioner lost in that year the $5,000 which he had paid for stock of the corporation and the $93,028 which he had advanced to it.

In computing his taxable income for the year 1926 petitioner was allowed a deduction of the total amount of this loss, to wit, $98,-028. This loss was partially absorbed by excess of income over deductions from other sources, leaving a net loss of $3,847.16. The petitioner in his income tax return for the succeeding year, to wit, 1927, claimed that this was a net loss resulting from the operation of a trade or business regularly carried on by petitioner in the year 1926, which he was entitled to carry forward from 1926 to 1927, under section 206, Revenue Act of 1926, supra.

The Commissioner disallowed the deduction for the year 1927, and determined a deficiency accordingly. Petitioner appealed from this determination to the Board of Tax Appeals.

The Board first rendered a decision sustaining petitioner's claim, but afterward upon a reconsideration of the case held that, in view of the decisions of the United States Supreme Court in Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L. Ed. 389, and Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 208, 77 L. Ed. 397, the Board's first decision was erroneous. The Board therefore set aside its former decision and entered an order approving the determination of the Commissioner. This decision is now before us for review.

We agree with the final decision of the Board, for we are unable to distinguish this case in principle from Dalton v. Bowers and Burnet v. Clark, supra.

In Dalton v. Bowers, it appears that the taxpayer organized a corporation for the purpose of manufacturing and marketing his patented articles. He purchased all of the capital stock, expecting to sell the shares at a profit. He took active charge of the affairs of the corporation, but his individual time was devoted in large part to matters of invention. The corporation's business was unprofitable from the start, and the taxpayer withdrew no money from it. From time to time he made loans to the corporation to pay its debts and carry on its business; these loans appeared on its books, unpaid; credits were placed to his salary account; the corporation and he filed separate income tax re-

turns; in his personal return he had claimed a deduction on account of bad debts due from it. The business failed, and the corporation was dissolved. In his return for 1925 the taxpayer claimed as a loss deductible for that year the amount paid for the capital stock. Held: That the loss "was not attributable to the operation of a trade or business regularly carried on by the taxpayer" within the meaning of section 206, Revenue Act of 1924, and, having been sustained in 1924, could not be offset against a gain in 1925.

In Burnet v. Clark, the facts as recited in substance in the decision of the Supreme Court are that from 1899 until 1922 Clark was closely connected with the Bowers Southern Dredging Company, which did river and harbor building work, dredging, and jetty work. He was manager, stockholder, active head, after 1905 president, and devoted himself largely to its affairs. During 1921 and 1922 he was a member of two partnerships similarly engaged and often associated with the Bowers Company. Also he owned and held as investments shares of a number of corporations, although he was not in the investment business. After 1917 the Bowers Company incurred continuous financial difficulties. To protect his interests therein at sundry times Clark indorsed the company's obligations to the bank. In 1921, a creditor's committee took charge, and thereafter Clark conducted the corporate affairs as managing director. A new concern took over the entire assets and business in 1922. Because of his indorsements, Clark paid $68,000 for the company during 1921. He claimed and was allowed to deduct the sum so lost upon his return for that year. During the same year he also lost $9,500 through sale of the corporate stock and in 1922 he sustained a similar loss amounting to $92,500. For both of these sums appropriate deductions were permitted in his return for 1921, the year when they were sustained. But, after considering all the circumstances, the Commissioner held that the losses did not result "from the operation of any trade or business regularly carried on by any taxpayer" and that the "net loss" which remained unsatisfied in the return of 1921 could not be carried over into the succeeding year so as to be deducted from the gains of that year. This ruling of the Commissioner was approved by the Board of Tax Appeals. Upon this record the Supreme Court, in approving the decision of the Board spoke as follows: "The respondent was employed as an officer of the corporation; the business which he conducted for it was not his own. There were other stockholders. And in no

sense can the corporation be regarded as his alter ego, or agent. He treated it as a separate entity for taxation; made his own personal return; and claimed losses through dealing with it. He was not regularly engaged in indorsing notes, or buying and selling corporate securities. The unfortunate indorsements were no part of his ordinary business, but occasional transactions intended to preserve the value of his investment in capital shares."

We need not compare in detail the facts in the foregoing cases with those involved in the present case. The decision in each is governed by the concluding paragraph in the decision in the Clark Case reading as follows: "A corporation and its stockholders are generally to be treated as separate entities. Only under exceptional circumstances—not present here—can the difference be disregarded."

The decision of the Board of Tax Appeals in the present case is affirmed.